UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

MARCO MARTINEZ ROMAN,

                    Petitioner,

        - against -

THOMAS DECKER, ET AL.,

                    Respondents.
───────────────────────────────

20-cv-3752 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

    The petitioner, Marco Martinez Roman brings this petition
for a writ of habeas corpus under 28 U.S.C. § 2241 against the
respondents: Thomas Decker,[1] Chad Wolf,[2] and William Barr.[3] The
petitioner argues that the respondents have violated the due
process clause of the Fifth Amendment because the respondents
have acted with deliberate indifference to his serious medical
needs and have wrongfully required him to bear the burden of
proof to establish his eligibility for release on bond under
8 U.S.C. § 1226(a). The petitioner seeks immediate release from
custody, or in the alternative, a bond hearing at which the
Government bears the burden of proof for his detention by clear
and convincing evidence.

---

[1] Thomas Decker is sued in his official capacity as New York City Field Office
Director for U.S. Immigration and Customs Enforcement.

[2] Chad Wolf is sued in his official capacity as Acting Secretary of the U.S.
Department of Homeland Security.

[3] William Barr is sued in his official capacity as the Attorney General of the
United States.

For the following reasons, the petition for a writ of
habeas corpus is **dismissed.**

## I.

The following facts are taken from the Amended Petition and
the sworn submissions of the parties and are undisputed unless
otherwise noted.

The petitioner is 42 years old and has lived in the United
States for nearly 25 years. Pet. ¶ 2. Prior to his detention,
the petitioner was the primary caretaker for his three children,
ages 7, 9, and 13, who are United States citizens. Id. at ¶ 14.

The petitioner has been arrested six times in the United
States for various theft, drug possession, and Driving While
Intoxicated charges. King Decl. ¶ 7. Four of those convictions
occurred over ten years ago. Pet. ¶ 17. Most recently, in June
2018, the petitioner was arrested and subsequently charged with
multiple counts relating to Driving While Intoxicated and
unlicensed operation of a motor vehicle. King Decl. ¶ 7(vi). In
September 2018, a bench warrant was issued for the petitioner
and he was returned on the warrant on January 25, 2019. Id. The
petitioner was detained at the Orange County Jail ("OCJ"). In
April 2019, the petitioner pleaded guilty to one count of
Aggravated Driving While Intoxicated: With a Passenger Less than
16 in violation of New York Vehicle Traffic Law Section 1192.2-

a(b) and was sentenced to a term of 364 days in jail, had his license revoked, and was fined $1000. Id.

On September 23, 2019, Immigration Customs and Enforcement ("ICE") agents arrested the petitioner and initiated removal proceedings against him. Pet. ¶¶ 15, 18. The petitioner was placed in the OCJ where the petitioner was otherwise detained on his state charge. The petitioner was served with a Notice to Appear, which charged him as removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. King Decl. ¶ 8. ICE also served the petitioner with a Notice of Custody Determination, notifying him that his detention was governed by 8 U.S.C. § 1226(a), that ICE had determined that it would keep the petitioner in custody pending the outcome of his case, and that the petitioner could seek a bond hearing before an Immigration Judge ("IJ"). Id. The petitioner has been detained at the OCJ for approximately 9 months on the basis of the ICE charge. Pet. ¶ 15.

On November 27, 2019, the petitioner filed a motion to terminate removal proceedings based on the insufficiency of the evidence that the Department of Homeland Security ("DHS") had filed in support of its burden to prove the petitioner's alienage. Id. at ¶ 18. In December 2019, the IJ denied the motion and the DHS designated Mexico as the country of removal.

King Decl. ¶ 10. The petitioner then filed a motion to reconsider, which was denied on or about January 10, 2020. Id.

On January 16, 2020, the petitioner moved for a cancellation of removal under 8 U.S.C. § 1229b(b). The petitioner appeared by a video teleconference with counsel before the IJ for a merits hearing on March 9, 2020. King Decl. ¶ 13. The IJ denied the application on April 13, 2020. Pet. ¶ 18. The petitioner then filed an appeal with the Board of Immigration Appeals ("BIA"), which is currently pending. Id.

On February 25, 2020, the petitioner received a bond hearing before an IJ. King Decl. ¶ 12. In support of his request for bond, the petitioner presented 30 documents, including: letters from his children, friends, and employers; medical records; and documentation of participation in rehabilitation programs. Pet. ¶ 19. The IJ denied the petitioner's request for bond. Id. The IJ's written decision, which was issued on April 8, 2020, found that the petitioner had not adequately demonstrated that he did not pose a danger to the community of the United States and did not reach whether the petitioner was a flight risk. Id. at Ex. 4. On March 20, 2020, the petitioner filed a Notice of Appeal with the BIA, which is still pending. Id. at ¶ 19. On appeal to the BIA, the petitioner argues that the IJ failed to consider the evidence properly and that the IJ's reasoning was conclusory. Govt. Return, Ex. 5.

Specifically, the petitioner argues that the IJ failed to
consider that the petitioner's two convictions for Driving While
Intoxicated involved no allegations of dangerous driving or
traffic violations and involved only driving without a license
and stopping a car on the side of the road. See id. In addition,
the petitioner argues that the IJ failed to consider mitigating
factors relating to the petitioner's participation in sobriety
programs and support from his family and community. See id.

The petitioner states that he suffers from a number of
health problems, including gout, chronic stage 2 hypertension,
and obesity. Pet. ¶ 16. The petitioner's medical records reflect
that the original intake date to the Orange County Jail was
January 25, 2019, the date that the petitioner was returned on
the warrant, and that he was rebooked on September 23, 2019 as
an ICE detainee. See Govt. Return, Ex. 4 at 3.[4] Over the course
of his detention, beginning in January, 2019, and including the
time the petitioner has spent detained by ICE, the petitioner
has been seen by medical professionals on numerous occasions.
Govt. Return, Ex. 4. Since his ICE detention began on September
23, 2019, he has been seen by a physician 10 times and a nurse
practitioner 4 times. Dixon Decl. ¶¶ 11-12. The petitioner has
also had his vital signs and medical interactions for the

---

[4] Because some of the exhibits submitted with the papers do not have page
numbers, all citations to page numbers in the exhibits refer to the ECF page
number included in the file stamp at the top of each page.

chronic management of his gout evaluated by a nurse practitioner 7 times. Id. at ¶ 13.

The medical records reflect that the petitioner's blood pressure has been continually monitored. See e.g., Govt. Ret. Ex. 4 at 81-82, 84, 129, 131-32. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ Id. at 17, 107, 109-10; Dixon Decl., Ex. A at 3. Since January 25, 2019, the petitioner's blood pressure has spiked on occasion and the petitioner has been prescribed blood pressure medication including clonidine and amlodipine. Id. at 29, 82; Pet., Ex. 6 (May 11, 2020 letter of Dr. Apstein).

The petitioner has also received motrin, allopurinol, and ██████████ for arthritis and gout pain. See e.g., Govt. Return, Ex. 4 at 28, 60, 104-05; Dixon Decl., Ex. A at 5. The petitioner also was prescribed and provided with prednisone for his gout flare-ups. See e.g., Govt. Return at 28, 60, 136. Indeed, the petitioner asked that he be provided with prednisone because it had helped him in the past. Id. at 28.

The petitioner has submitted three letters from a medical professional, Dr. Ted Apstein, who has reviewed the petitioner's medical records. In his May 11, 2020 letter, Dr. Apstein notes that the petitioner has stage 2 chronic hypertension; had

chronic bilateral knee arthritis for which the petitioner had taken prednisone, which has serious side effects including immune system suppression; and that the petitioner was medically obese. Pet., Ex. 6. Dr. Apstein also noted that the petitioner's Body Mass Index ("BMI") is 31.6. Id. In a subsequent letter dated May 19, 2020, Dr. Apstein reiterated that prednisone is an immunosuppressant, which would place the petitioner at an increased risk for contracting COVID-19. Id. at Ex. 10. On June 8, 2020, Dr. Apstein wrote that he considered the petitioner to have used prednisone for a prolonged period of time. Pet'r Reply, Ex. Q.

The OCJ follows the guidance issued by the Centers for Disease Control for correctional facilities in its evaluation and testing of the inmates/detainees at the OCJ. All staff members wear masks. Staff members and vendors are screened before entering the facility. Catletti Decl. ¶¶ 9(d), 9(e), 9(h). As of June 3, 2020 and July 9, 2020, the OCJ had no confirmed positive COVID-19 ICE detainees or inmates and no symptomatic inmates or detainees. Mele Decl. ¶ 9(i); Catletti Decl. ¶ 9(n). Since the COVID-19 pandemic began, there have been eight confirmed cases among the facility's staff, but none had contact with ICE detainees and those staff members quarantined for at least 14 days prior to returning to work. Mele Decl. ¶ 9(k); Catletti Decl. ¶ 9(n). ICE detainees are housed

7

separately from inmates at the OCJ and have single-occupancy cells. Mele Decl. ¶¶ 5-6. Meals are provided in cells; detainees are given two reusable face masks; housing facilities are sanitized at least three times per shift; and the facility provides disinfectant spray, bleach, hand sanitizer, hot water, and soap in every housing unit. Mele Decl. ¶¶ 9(f), 9(g), 9(l). Detainees are permitted to be outside of their cells for up to 10 hours a day. Id. at ¶ 9(g). The OCJ suspended ICE detainee intake from March 23, 2020 to May 27, 2020; intake has now resumed and all new admissions are quarantined for at least 14 days. Id. at ¶¶ 9(a), 9(b)(i). There are currently 5 ICE detainees being quarantined due to be new admissions. Catletti Decl. ¶ 9(b)(i). Detainees may make daily sick calls as needed. Id. at ¶ 9(m).

The OCJ is substantially below the maximum capacity of 802 inmates/detainees. As of July 9, 2020, the OCJ housed 86 ICE detainees, 169 county detainees, and 82 United States Marshal detainees, for a total of 337 detainees. Id. at ¶ 4.

The petitioner states that while he is permitted to move around for several hours outside of his cell, there is not enough space in the common areas for the detainees who are allowed out of their cells at the same time to maintain six feet of distance from each other. Mankin Decl. ¶ 5. The petitioner also states that he works as a custodian in his unit and is

8

responsible for cleaning the showers twice a day and also
assists cleaning common areas twice per day. Id. at ¶ 11.
However, he states that there are not enough disinfectant and
paper towels to clean every surface. Id. As of May 20, 2020 the
petitioner states that the jail staff had refused his medication
for gout for approximately five days, and that it typically
takes the medical staff two days to respond to his sick calls;
in this time, the petitioner fasts, which is the only way he can
ease his symptoms other than medication. Id. at ¶¶ 8-9. As of
July 7, 2020, the petitioner states that he had been suffering
from a gout attack for over two weeks and had not seen a doctor
despite putting in multiple sick call requests. Mankin Suppl.
Decl. ¶ 3. He stated that the jail refused to let him see a
doctor to receive prednisone. Id. at ¶ 4.

   The petitioner's most recent medical visit on July 10, 2020
was with a nurse practitioner and was for his gout flare-up.
Dixon Decl., Ex. A at 2. Prior to this visit, the last visit he
had was with a nurse practitioner on June 9, 2020. Id. ¶ 12.
However, the medical records also reflect a 90-day prescription
for allopurinol and ███████, medications for gout, on June
25, 2020. Id., Ex. A at 5. The conclusion of the July 10, 2010
visit was to re-evaluate the medications after a lab review and
schedule a follow up appointment in 21 days for pain management
after lab review. Id. at 3, 5.

On May 15, 2020, the petitioner filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241. On May 21, 2020, the petitioner filed this amended petition for habeas corpus.[5]

## II.

An application for habeas corpus under 28 U.S.C § 2241 is the proper vehicle to challenge "the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001). Under this provision, the court is authorized "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The court is also "empowered to hear claims by non-citizens challenging the constitutionality of their detention." Demore v. Kim, 538 U.S. 510, 516 (2003). The petitioner must satisfy his burden of proof that his detention is unconstitutional by a preponderance of the evidence. See

---

[5] The petitioner also separately seeks release as a member of the class in Fraihat v. U.S. Immigration & Customs Enforcement, No. EDCV 19-1546, 2020 WL 1932570, at *29 (C.D. Cal. Apr. 20, 2020). Indeed, some of the papers submitted in connection with this petition were also submitted in the Fraihat request. See Pet. ¶¶ 19-20.

Dzhabrailov v. Decker, No. 20-CV-3118, 2020 WL 2731966, at *3
(S.D.N.Y. May 26, 2020) (collecting cases).

### III.

The petitioner argues that the respondents have violated
his substantive due process rights because the respondents have
acted with deliberate indifference to his serious medical needs.
On this substantive due process claim, the petitioner seeks
immediate release. He also argues that the respondents have
violated his procedural due process rights by requiring him to
bear the burden of proof to establish his eligibility for
release on bond under 8 U.S.C. § 1226(a) and that due process
requires an IJ to consider an individual's ability to pay and
alternative conditions of release to be taken into account when
setting bond. On this procedural due process claim, the
petitioner seeks a bond hearing at which the Government bears
the burden of proof for his detention by clear and convincing
evidence. He also seeks to require the IJ at the bond hearing to
consider alternatives to detention.

### A.

A civil detainee in federal custody may raise a
constitutional due process challenge under the Fifth Amendment
regarding the medical care provided to the detainee. See
Halladene v. Decker, No. 20-CV-2883, 2020 WL 2133057, at *2
(S.D.N.Y. May 5, 2020); Adekoya v. Holder, 751 F. Supp. 2d 688,

695 n.4 (S.D.N.Y. 2010). A federal civil detainee's claims are evaluated under the Due Process Clause of the Fifth Amendment because such detainees "have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (internal quotation marks and citations omitted) (pretrial detainees' claims of unconstitutional confinement by the City of New York reviewed under the Due Process Clause of the Fourteenth Amendment). To succeed on this claim, the petitioner must establish "(1) that [the petitioner] had a serious medical need . . . , and (2) that [the respondents] acted with deliberate indifference to such needs." Charles v. Orange Cty., 925 F.3d 73, 86 (2d Cir. 2019). A serious medical need is one that "may produce death, degeneration, or extreme pain." Id. (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). To show deliberate indifference, a civil detainee need only prove that the respondents "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 35. Deliberate indifference is more than "mere negligence," but rather, must involve "culpable recklessness, i.e., an act or a failure to act . . . that evinces a conscious disregard of a

substantial risk of serious harm." Charles, 925 F.3d at 87
(internal quotation marks and citations omitted).

**1.**

The petitioner has failed to show that he has a serious
medical need due to his high blood pressure, immune-compromised
state from taking medications for gout, and obesity, that rises
to the level the justifies his release from detention, and
indeed, the petitioner does not so argue. The petitioner does
not argue that his underlying conditions of high blood pressure,
gout, and obesity would, on their own, establish the required
showing of a serious medical need. These conditions as the
defendant experiences them after treatment are not so urgent to
rise to the level of death, degeneration, or extreme pain.[6]
Instead, the petitioner argues that in the context of the COVID-
19 pandemic, the petitioner's existing health conditions,
together with the heightened risk of exposure to COVID-19 he
faces in the setting of the OCJ, create an intolerably high risk
to his health that fulfills the first prong of his deliberate
indifference claim. The petitioner articulates his claims for a

---

[6] Gout may be a condition that causes extreme pain. But the detention
authorities have not been indifferent to that condition. The petitioner has
been seen on numerous occasions for that condition and has been prescribed
various medications. They have prescribed motrin, allopurinol, and
███████. They have also prescribed prednisone, as the petitioner
requested, to alleviate that condition. It is the defendant's
immunocompromised state from having taken prednisone that he complains makes
him more susceptible to the severe effects of COVID-19.

violation of substantive due process as follows: "Mr. Martinez's ongoing detention at Orange County Jail violates his substantive due process rights due to his pre-existing medical conditions and heightened vulnerability to severe illness or death if infected by COVID-19, and because of Respondents' knowing failure to adequately protect Mr. Martinez from exposure to this infectious disease." Pet. ¶ 80.

The CDC has advised that individuals with hypertension, compromised immune systems, and obesity are at higher risk of severe illness from COVID-19. See People of Any Age with Underlying Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited July 11, 2020). It is possible that the petitioner meets these risk groups. First, although the respondents argue that there is no evidence that the petitioner had high blood pressure in his medical record, the record shows that the petitioner's blood pressure has ███████████████, which the CDC characterizes as Stage 2 hypertension.[7] See Facts About Hypertension, CDC, https://www.cdc.gov/bloodpressure/facts.htm (last visited June 22, 2020). Further, Dr. Apstein opined that the petitioner's

---

[7] Pursuant to Rule 201(b) of the Federal Rules of Evidence, the Court takes judicial notice of background information on hypertension, taken from the CDC website. See Crosby v. Petermann, No. 18-CV-9470, 2020 WL 1434932, at *9 (S.D.N.Y. Mar. 24, 2020) (taking judicial notice of background information Hepatitis A, B, and C, taken from the CDC website).

blood pressure readings show that the petitioner has stage 2 chronic hypertension. Second, the petitioner has often taken prednisone for his gout and the parties do not dispute that the CDC has stated that a prolonged use of corticosteroids may lead to a weakened immune system. See People of Any Age with Underlying Medical Conditions. Third, the petitioner's BMI is 31.6; the CDC states that individuals who are obese, defined as having a BMI of 30 or above, are at higher risk of severe illness from COVID-19. Id.

However, the petitioner has failed to show that the respondents have acted with deliberate indifference to his medical needs in response to the COVID-19 pandemic. Rather, the OCJ has taken multiple measures to reduce the risk of exposure to COVID-19 and has preventive measures in place should any inmates or corrections personnel contract the disease. The ICE detainees have received masks, are housed in individual cells, and eat their meals within their own cells. The housing facilities receive disinfectant spray, bleach, sanitizer, and soap and the facilities are repeatedly sanitized. While the petitioner argues that there is not enough sanitizer to clean every surface and not enough space to socially distance in the common areas, the OCJ, unlike some other ICE detention facilities, has no inmates or detainees who have confirmed COVID-19 infections and no symptomatic inmates or detainees as

15

of July 9, 2020. Furthermore, the eight staff who had contracted COVID-19 did not have contact with ICE detainees and quarantined for 14 days prior to returning to work. The facility also requires newly admitted individuals to quarantine for 14 days. The OCJ follows CDC Guidance with respect to correctional institutions. All staff members wear masks and personnel and vendors are screened before entering the OCJ. The OCJ is well under its maximum capacity.

As other courts in this district have found, the OCJ has implemented detailed procedures to minimize the risk of COVID-19. See e.g., Graham v. Decker, No. 20-CV-2423, 2020 WL 1847568, at *6 (S.D.N.Y. Apr. 13, 2020); Ulger v. Barr, No. 20-CV-2952, 2020 WL 2061473, at *2 (S.D.N.Y. Apr. 29, 2020). "Given these precautionary measures [taken at OCJ], Petitioner cannot demonstrate that Respondents have acted with deliberate indifference to the medical needs of detainees housed within OCJ." Dzhabrailov, 2020 WL 2731966, at *9. While some courts in this District have granted relief to detainees at the OCJ, see, e.g., Ferreyra v. Decker, No. 20-CV-3170, 2020 WL 1989417, at *9 (S.D.N.Y. Apr. 27, 2020); Nikolic v. Decker, No. 20-CV-2500, Hrg. Tr. at 18-20 (S.D.N.Y. April 3, 2020), given the preventive measures at the OCJ combined with the demonstrated results thus far, the petitioner has failed to show that the immigration officials have shown deliberate indifference to the medical

needs of the petitioner. The pandemic is undeniably severe and
no one can predict the future. But the Fifth Amendment requires
the petitioner to show that the respondents have acted with
deliberate indifference to his serious medical needs. Given the
precautions that the OCJ has taken to prevent the petitioner
from contracting that infection and the demonstrated results of
those precautions thus far, the petitioner has failed to show
that the respondents have acted with deliberate indifference to
his medical conditions. See Gutierrez v. Dubois, No. 20-CV-2079,
2020 WL 3072242, at *6 (S.D.N.Y. June 10, 2020) (denying
petition for deliberate indifference claim by detainee at OCJ
with serious medical needs); Bernal Gutierrez v. Decker, No. 20-
CV-4046, 2020 WL 3396283, at *2 (S.D.N.Y. June 10, 2020) (same).

**2.**

While the petitioner does not rely on an argument that the
OCJ has been deliberately indifferent to his medical needs,
other than to argue that he is susceptible to severe effects of
COVID-19, it should be noted that the OCJ has not been
deliberately indifferent to his medical needs. In addition to
the steps that the prison has taken for the facility in general,
the officials at the OCJ have provided treatment for the
petitioner's specific medical issues. In May, the petitioner
stated that he was delayed in obtaining a gout prescription for
about five days on one occasion and that it takes the staff two

17

days to respond to his sick calls. In July, the petitioner
stated that he had not seen a doctor for several weeks and that
he had a painful gout flare-up. However, the medical records
reflect that the petitioner has seen a doctor or nurse
practitioner on 14 occasions since he was detained by ICE. The
petitioner has been seen an additional 7 times to monitor his
vital signs and gout. He has been provided with several
medications including motrin, allopurinol, ███████ and, at
his request, with prednisone. He received a renewed prescription
for allopurinol and ████████ on June 25, 2020. Dixon Decl.,
Ex. A at 5. The records reflect a recent prescription of
prednisone on May 8, 2020. Govt. Return, Ex. 4 at 136. Indeed,
it is his frequent prescriptions of prednisone that the
petitioner complains has resulted in a compromised immune
system. His medical needs have been monitored and continue to be
addressed, most recently on July 10, 2020. To the extent those
medical needs have placed the petitioner in a category more
vulnerable to the effects of COVID-19, the OCJ has taken
precautions to protect the petitioner. The petitioner has failed
to show by a preponderance of the evidence that the respondents
have acted with deliberate indifference to any serious medical

needs. Accordingly, the petitioner's substantive due process claim is denied.[8]

### B.

The petitioner raises a procedural due process claim on the grounds that the IJ improperly placed the burden of proof on the petitioner at his bond hearing to prove that he was not a danger to the United States or a flight risk. He also argues that the IJ should consider an individual's ability to pay and alternative conditions of release to be taken into account when setting bond. It is not necessary to reach the merits of the petitioner's procedural due process claim because the petitioner has failed to exhaust his administrative remedies.

While there is no statutory requirement that a detainee exhaust administrative remedies before challenging a bond decision, see Monterosa, 2020 WL 1847771, at *4 (collecting cases), as a prudential matter, courts routinely require a petitioner to exhaust administrative remedies before reviewing a bond determination. See e.g., Torres v. Decker, No. 18-CV-10026, 2018 WL 6649609, at *2 (S.D.N.Y. Dec. 19, 2018); Dembele v. Decker, No. 18-CV-5070, 2018 WL 4960234, at *2 (S.D.N.Y. Oct. 9,

---

[8] The petitioner also argues that the combination of his medical conditions and the risk posed by COVID-19 at OCJ demonstrate that his conditions of confinement amount to punishment. However, he acknowledges that this claim merges with his substantive due process claim of deliberate indifference. See Pet'r Reply at 6 (citing Ferreyra, 2020 WL 2612199, at *8). Accordingly, because the petitioner has failed to establish a deliberate indifference claim, his conditions of confinement claim is also denied.

2018) (collecting cases). There are, however, several recognized exceptions to the exhaustion requirement. "When an exhaustion requirement is judicially imposed instead of statutorily imposed, . . . exhaustion of administrative requirements may not be required when (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." Beharry v. Ashcroft, 329 F.3d 51, 62 (2d Cir. 2003) (Sotomayor, J.) (internal quotation marks and citations omitted).

Because the appeal of the IJ's bond determination is still pending before the BIA, the petitioner has failed to exhaust his administrative remedies.

The petitioner has failed to show that any of the exceptions to prudential exhaustion apply in this case. The first and third exceptions do not apply. On appeal to the BIA, the petitioner argues that the IJ had failed to consider properly the evidence that the petitioner presented of his lack of dangerousness. It is possible that the BIA could overturn the IJ's decision and find that the petitioner had shown that he is not a danger to the community, because his convictions for Driving While Intoxicated did not concern any dangerous driving activity or traffic violations. At this point, "the respondents

20

might release the petitioner rather than provide a bond hearing," at which point the petitioner would receive the relief he seeks. Cabral v. Decker, 331 F. Supp. 3d 255, 263 n.6 (S.D.N.Y. 2018); Arana v. Decker, No. 20-CV-4104, 2020 WL 3833459, at *3 (S.D.N.Y. July 8, 2020) (noting that the BIA could release petitioner on bond when deciding his appeal from the IJ's finding of dangerousness, when the IJ did not make findings as to risk of flight); Torres, 2018 WL 6649609, at *2 (noting that the BIA could grant the petitioner release on bond if it were persuaded that the IJ erred on assessing dangerousness).

The petitioner argues that if he succeeded in persuading the BIA that the IJ erred in finding that he is a danger to the community, he would still have to persuade the IJ on remand that he was not a risk of flight and he would be saddled with the allegedly unconstitutional burden of proof. This argument ignores the fact that the immigration authorities may decide to grant the petitioner's request for a bond. In any event, the petitioner may succeed in persuading the IJ or, if necessary the BIA, that he is not a risk of flight and thus obtain the bond he seeks. See Monterosa v. Decker, 20-CV-2653, 2020 WL 1847771, at *5 (S.D.N.Y. Apr. 11, 2020) (noting that the BIA's potential remand to the IJ to determine flight risk could still result in release on bond and finding that first and third exceptions to

exhaustion were therefore not met). "[T]he fact that [the petitioner's] BIA appeal could potentially moot [the petitioner's] habeas petition counsels for the Court to stay its hand until the exhaustion of administrative review in the name of preserving scarce judicial resources and avoiding the possibility of duplicative or conflicting rulings." Dembele, 2018 WL 4960234, at *3 (internal quotation marks and citation omitted).

This reasoning also disposes of the fourth exception. "[T]he question of whether the petitioner's yet-to-happen bond hearing complies with due process is not before this Court." Cabral, 331 F. Supp. 3d at 263 n.6. The purpose of the exhaustion requirement "is to facilitate administrative resolution of issues that might render judicial review unnecessary." Torres, 2018 WL 6649609, at *4 (citing Beharry, 329 F.3d at 62). "[C]ourts will endeavor to avoid deciding a constitutional issue if the case might be resolved on a narrower factual basis." Monterosa, 2020 WL 1847771, at *5. Because the petitioner's claims can be mooted by the possibility of the petitioner's being released on bond after exhausting his administrative remedies, the petitioner has failed to show that the fourth exception to the prudential exhaustion requirement applies.

Finally, the petitioner argues that he is suffering irreparable injury on three grounds: by being deprived of his liberty without constitutionally-adequate process; by being separated from his young children, who have been diagnosed with mental or behavioral health conditions after they were separated from their father; and by facing imminent risk to his health from COVID-19. The petitioner argues that the risk of harm will be exacerbated because he will likely be detained for many more months while the removal proceeding is resolved.

The risk of prolonged detention does not constitute an irreparable injury that excuses the prudential exhaustion requirement. See Michalski v. Decker, 279 F. Supp. 3d 487, 496-97 (S.D.N.Y. 2018) (collecting cases). If continued detention were sufficient to excuse exhaustion, exhaustion would always be excused. "Virtually every non-citizen faces a delay in exhausting administrative remedies before the Board, yet Courts in this district and across the country routinely hold them to the exhaustion requirement nonetheless." Torres, 2018 WL 6649609, at *3 n.4. In addition, courts have not found that an exception was met when petitioners have asserted that they and their families will suffer irreparable harm from prolonged detention. See id. at *3. Finally, for the reasons stated above, the combination of treatment provided to the petitioner for his underlying medical conditions and the measures that OCJ has

taken to reduce the risk of COVID-19 spreading indicates that the petitioner does not face an imminent risk that excuses the exhaustion requirement. Accordingly, the petitioner's procedural due process claim is denied without prejudice.

### CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The petitioner has failed show that he has a serious medical need that the respondents have treated with deliberate indifference. Accordingly, the petitioner's substantive due process claim is **denied.** The petitioner has also failed to exhaust administrative remedies following the IJ's denial of bond and has failed to meet any of the exceptions to the prudential exhaustion requirement. Accordingly, the petitioner's procedural due process claim is **denied without prejudice.** The Clerk is directed to enter judgment dismissing the writ. The Clerk is also directed to close this case and to close all pending motions.

**SO ORDERED.**

**Dated:**     **New York, New York**
          **July 13, 2020**

                              /s/ John G. Koeltl
                         **John G. Koeltl**
                   **United States District Judge**